ARDEN BURSTEIN, ESQ.  SBN 175309
GURSTEL LAW FIRM P.C.
6565 Sunset Blvd., Suite 412
Hollywood, CA  90028
Tel. (323) 993-0500
Fax (323) 993-0501
Email: a.burstein@gurstel.com
Attorneys for Defendant, Primera Financial Corp.,
a corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY MORRISON, | CASE NO: 2:23-cv-7677-JLS (AJRx) |
| Plaintiffs, | AMENDED CROSS CLAIM OF DEFENDANT AND CROSS-CLAIMANT PRIMERA FINANCIAL CORP. |
| vs. | |
| LENDERS RECOVERY SERVICES INC., DONALD LEE MCCOMAS, LUIS F. TOBAR, YOLANDA TOBAR, JORGE A. TOBAR, PRIMERA CREDIT CORP. | AMENDED CROSS CLAIM FOR: |
| Defendants. | EXPRESS INDEMNITY |
| PRIMERA CREDIT CORP., | |
| Cross-Claimant, | |
| vs. | |
| LENDERS RECOVERY, INC, DONALD LEE MCCOMAS, LUIS F. TOBAR | |
| Cross-Defendant. | |

CROSS CLAIMANT PRIMERA CREDIT CORP., a corporation, (hereinafter "Cross-Claimant" or "Primera") hereby alleges as follows:

**GENERAL ALLEGATIONS**

1.       Cross-Defendant Lenders Recovery Services Inc., Donald Lee McComas, Luis F. Tobar, Yolanda Tobar, Jorge A. Tobar (collectively, "Lenders Recovery") is at all times herein mentioned, a California corporation which

-1-

1   regularly conducts business in California.

2       2.      Primera Financial Corp. ("Primera Financial") is all times herein
3   mentioned, a California corporation which regularly conducts business in
4   California.

5       3.      Lenders Recovery is at all times mentioned a licensed repossession
6   agency, bonded and insured.

7       4.      Primera Financial is informed and believe and based upon such
8   information and belief, allege that Lenders Recovery., and each of them, were
9   always and herein mentioned are, individuals, who were and are legally
10  responsible and liable for the acts, omissions, and events referred to in this
11  Complaint.

12                          **FACTUAL ALLEGATIONS**

13      5.      Cross-Claimant is informed and believes and thereon alleges
14  that Lenders Recovery is responsible for the conduct and damages alleged in
15  the complaint, among other things, the agent principal, co-partner, and alter-
16  ego of each other defendant.

17      6.       For all times relevant herein, pursuant to an assignment in
18  writing, Sierra Credit Corporation ("Sierra Credit") became the owner of a
19  written contract ("Contract") pursuant to which HARRY MORRISON
20  (hereinafter "Harry Morrison") purchased from Sierra's assignor the subject
21  vehicle, 2015 Chevrolet Silverado, Vehicle Identification Number:
22  3GCPCREC1FG351758 (The "Vehicle") and agreed to perform all of the terms
23  and conditions of thereof, including the timely payment of all amounts falling
24  due thereunder to Plaintiff as holder thereof. Harry Morrison signed a retail
25  installment sales contract ("RISC"), agreeing to its terms.

26      7.      At all times relevant hereto, Sierra Credit has been the holder of
27  the first priority security interest in the Vehicle and was listed as the legal
28  owner of The Vehicle on the California Title.

8.  At all times relevant, Sierra Credit was a creditor at the time of the repossession, on July 21, 2023, which was repossessed by Lenders Recovery, a licensed repossession agency.

9.  Sierra Credit and Lenders Recovery entered into a Motor Vehicle Repossession Services Agreement (the "Repossession Agreement"), pursuant to which Lenders Recovery agreed to indemnify Sierra "from any claims related to [Lender Recovery's] repossession activity. The Repossession Agreement is attached as Exhibit "A".

10.  At all times relevant, and specifically on the date of repossession on July 21, 2023, Primera Financial had been retained by Sierra Credit to service the loans of Sierra Credit pursuant to a Servicing Agreement ("Servicing Agreement"), dated June 29, 2023. The Servicing Agreement is attached as Exhibit "B". Pursuant to its language, in ¶ 2, Primera is expressly provided with the "full power and authority to do any and all things in connection with such servicing" and specifically authorized to "repossess all automobiles associated with defaulted or charged-off contracts ...".  Sierra retained Primera Financial to work this loan as its agent, and intended third party beneficiary of the Repossession Agreement.

11.  Due to Harry Morrison's default pursuant to the RISC, Sierra Credit was entitled to immediate possession of the Vehicle.

12.   Demand was made to return possession of the Vehicle and Plaintiff failed to return The Vehicle.

13.  Or about July 21, 2023, Primera Financial was servicing the repossessed account on behalf of Sierra pursuant to the Agreement. The Vehicle was repossessed by a duly licensed repossession agent whereby Primera had agreed to perform services as a repossession agent.

14.  Primera Financial is informed and believes and thereon alleges, that Lenders Recovery is negligently, intentionally, or strictly responsible in

-3-

1  some manner for the events and happenings herein referred to, and

2  negligently, intentionally, or strictly causes the injuries and damage, if any, to

3  Primera Financial.

4      15.    There is currently on file with the District Court of California,

5  Central District, a First Amended Complaint for damages (the "Amended

6  Complaint") in case number 2:23-cv-07677, captioned Harry Morrison vs.

7  Lenders Recovery Services, Inc., Donald Lee McComas, Luis F. Tobar, Yolanda

8  Tobar, Jorge A. Tobar, Primera Financial Corp. The allegations of the

9  Complaint are incorporated herein in its entirely for reference only and not to

10 admit any allegations therein.

11                  **FIRST CAUSE OF ACTION**

12                      (Express Indemnity)

13     16.    Primera Financial incorporates by this reference and all of the

14 allegations of paragraphs 1 – 15 as though set forth in full.

15     17.    An actual controversy exists between the Primera Financial and

16 Lenders Recovery, in that Primera Financial alleges that if any liability or

17 responsibility is imposed upon Primera Financial, said liability or

18 responsibility, if any rests upon Lenders Recovery, and each of them.

19     18.    Primera Financial contends that if it were found to be liable to

20 Plaintiff as a result of any act or omission in this matter, any liability will be

21 the direct and proximate result of the acts, omissions, breach of contract,

22 negligence, or other conduct of Lenders Recovery, and each of them.

23     19.    Primera Financial is entitled to a determination of each party's

24 respective share of the legal responsibility for any damages sustained herein

25 based on an obligation to indemnify Sierra Credit and Primera Financial, as its

26 agent.  Therefore, Primera requests, as a matter of law, a judicial

27 determination of its damages to Plaintiff in this action.

28     20.    WHEREFORE, PRIMERA FINANCIAL prays for judgment set forth

below.

PRIMERA prays for judgment against LENDERS RECOVERY and each of them
as follows:

    1.    That if PRIMERA FINANCIAL is found liable to Plaintiff as a result
of any action or omission of LENDERS RECOVERY, PRIMERA FINANCIAL
requests a judicial determination of damage according to respective fault;

    2.    A determination that LENDER RECOVERY'S tender of defense and
indemnification and contribution for any damages as a result of any action of
omission of LENDERS RECOVERY as well as attorneys' fees and costs.


DATED: November 26, 2024               Respectfully submitted,

                                      GURSTEL LAW FIRM

                        By:    /s/Arden Devlin Burstein
                                ARDEN DEVLIN BURSTEIN
                                Attorneys for Primera Financial
                                Corp., a corporation

## MOTOR VEHICLE REPOSSESSION SERVICES AGREEMENT

This Service Agreement (this "Agreement") dated as of April 24, 2017 (the "Effective Date"), is by and between SIERRA CREDIT CORP., a California corporation, with offices located at 9160 Deering Avenue, Chatsworth, California 91311 ("Creditor") and LENDERS RECOVERY, a repossession agency, with offices located at 15904 Strathern St., #10, Van Nuys, CA 91406 ("Agency").

WHEREAS, Creditor is the owner of various Retail Installment Sales Contracts, granting liens on automobiles and, from time to time, requires repossession services when various debtors are delinquent on their debts;

WHEREAS, Agency is duly licensed in the State of California as a repossession agency (License No. RA 1356) and has the capability to provide certain repossession services; and

WHEREAS, Creditor desires to retain Agency to provide the said services under the terms and conditions hereinafter set forth, and Agency is willing to perform such services;

NOW THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Creditor and Agency (hereinafter, collectively, the "Parties") agree as follows:

1. **Services.** Agency shall provide repossession services to Creditor as described in Attachment A (the "Services") in accordance with the terms of this Agreement. The Services shall be provided in accordance with the terms and subject to the conditions set forth in Attachment A and this Agreement, using personnel of required skill, experience and qualifications, in a timely and professional manner, in accordance with generally recognized industry standards in Agency's field, and to the reasonable satisfaction of the Creditor.

2. **Term.** This Agreement shall commence as of the Effective Date and shall continue thereafter until Services are no longer required, unless sooner terminated pursuant to Section 15.

3. **Territory.** Agency shall perform Services within the State of California.

4. **Agency Obligations.** Agency shall:
   a. Before the date on which the Services are to start, obtain, and all times during the term of this Agreement, maintain all necessary licenses (e.g. BSIS license);
   b. Comply with all relevant laws applicable to repossession agencies in providing the Services;
   c. Comply with all rules, regulations and policies of Creditor, of which it has been made aware, in its provision of the Services;
   d. Maintain complete and accurate records relating to the provision of the Services under this Agreement. During the term of this Agreement, upon Customer's written request, Agency shall allow Creditor to inspect and make copies of such records and interview Agency personnel in connection with the provision of the Services and any such inspection shall take place during regular business hours no more than once every two (2) years.
   e. Ensure that all persons, whether employees, agent, subcontractors, or anyone acting for or on behalf of the Agency, are properly licensed, certified or accredited as required by applicable

Exhibit A

law and are suitably skilled, experienced and qualified to perform the Services in compliance with all relevant laws and regulations. Agency shall provide Creditor with updated licenses and bond information as they are renewed.

5.  **Assignments.** Agency shall only repossess vehicles upon a written order executed by an authorized agent of the Creditor specifying the vehicle type (year, make and model), VIN, and borrower's name, or identification of other property. Agency shall not release any vehicle to a person other than an authorized agent of the Creditor.

6.  **Custody of Vehicles.** During custody of the vehicles, Agency shall use all possible care to protect and safeguard the vehicles, and shall deliver the same as directed by the Creditor, and Creditor's expense, in the same condition as received, normal wear and tear excepted.

7.  **Method of Repossession.** Agency shall repossess the items which are assigned to it without creating a breach of the peace, and in accordance with any laws or regulations related thereto, including FDCPA. In the event that any repossession cannot be accomplished without a breach of the peace, Agency shall immediately notify Creditor of the fact and shall discontinue attempts to repossess said vehicle until the Creditor reassigns the same. Agency shall not act in any way that would be considered unlawful and/or wrongful.

8.  **Personal Property Inventory.** In the event that any vehicle that is repossessed contains personal property, Agency shall have two (2) persons witness a complete inventory. Agency shall release such items of personal property to the debtor upon execution of a receipt of the same. If a vehicle was repossessed without a key and Agency is unable to open the vehicle, Agency shall make a written note of that fact as a reason for not conducting a personal property inventory. Anything disposed of due to health and safety reasons must be inventoried and the disposal method notated.

9.  **Sub-Contractor.** Agency shall not sub-contract its performance without the previous written consent of the Creditor.

10. **Creditor Obligations.** Creditor shall:
    a.  Designate a primary contact with respect to this Agreement and to act as its authorized representative with respect to the Services and require that said authorized representative respond promptly to any reasonable requests from Agency for instructions, information or approvals required by Agency to provide the Services;
    b.  Comply with all relevant laws applicable to financial institutions regarding repossessions.

11. **Fees and Payment Terms.**
    a.  For the services to be performed hereunder, Creditor will pay to Agency a fee determined according to the fee list set forth in Attachment B ("Pricing Sheet and Coverage Area").
    b.  Agency shall issue invoices to Creditor and Creditor shall pay all properly invoiced amounts due to Agency every two (2) weeks after Creditor's receipt of such invoice, except for any

amounts disputed by Creditor in good faith.

12. **Confidentiality.**
    a. All non-public, confidential or proprietary information of Creditor, including, but not limited to, information pertaining to customers ("Confidential Information"), disclosed by Creditor to Agency, whether disclosed orally or in written, electronic or other form or media, and whether or not marked, designated or otherwise identified as "confidential," in connection with the provision of the Services and this Agreement is confidential, and shall not be disclosed or copied by Agency without the prior written consent of Creditor.
    b. Agency shall use the Confidential Information only for the purpose of providing Services under this Agreement and shall maintain systems to ensure that any Confidential Information remains secure.
    c. Creditor shall be entitled to injunctive relief for any violation of this Section and Agency shall hold Creditor harmless from any claims related to improper disclosure of confidential customer information.

13. **Compliance with the Law.** Agency represents and warrants to Creditor that it is in compliance with and shall comply with all applicable laws, regulations and ordinances. Agency has and shall maintain in effect all the licenses, permissions, authorizations, consents and permits that it needs to carry out its obligations under this Agreement. Further, the Services will be in conformity in all respects with all requirements or specifications stated in this Agreement.

14. **Insurance.** At all times during the term of this Agreement, Agency shall, at its own expense, maintain and carry insurance in full force and effect which includes, but is not limited to general liability in a sum no less than $50,000.00 with financially sound and reputable insurers. Upon Creditor's request, Agency shall provide Creditor with a certificate of Insurance from Agency's insurer evidencing the insurance coverage specified in this Agreement. Agency shall provide Creditor with 5 days' advance written notice in the event of a cancellation or material change in Agency's insurance policy.

15. **Termination.** In addition to any remedies that may be provided under this Agreement, either party may terminate this Agreement with immediate effect upon written notice to the other party ("Defaulting Party"), if the Defaulting Party:
    a. Breaches this Agreement, and such breach is incapable of cure, or with respect to a breach capable of cure, and Defaulting Party does not cure such breach within 1 day after notice of such breach;
    b. Becomes insolvent, files a petition for bankruptcy or commences or has commenced against its proceedings relating to bankruptcy, receivership, reorganization or assignment for the benefit of creditors; or
    c. Is dissolved or liquidated or takes any corporate action for such purpose.

16. **Obligations of Agency upon Expiration or Termination.** Upon expiration or termination of this Agreement for any reason, Agency shall promptly:

    a. Deliver to Creditor all documents, work product and other materials, whether or not complete, prepared in the course of performing the Services for which Creditor has paid;

    b. Deliver to Creditor, all documents and tangible materials (and any copies) containing, reflecting, incorporating or based on Creditor's Confidential Information;

    c. Permanently erase all of Creditor's Confidential Information from its computer systems; and

    d. Certify in writing to Creditor that it has complied with the requirements of this Section.

17. **Survival.** The rights and obligations of the parties set forth in Sections 12 and 19, and any right or obligation of the parties in this Agreement which, by its nature, should survive termination or expiration of this Agreement, will survive any such termination or expiration of this Agreement.

18. **Waiver.** No waiver by any party of any of the provisions of this Agreement is effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement operates or may be construed as a waiver thereof. No single or partial exercise of any right, remedy, power or privilege hereunder precludes any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

19. **Indemnity.** Agency shall indemnify and hold Creditor harmless from any claims related to the repossession activity undertaken by the Agency, including reasonable attorney and professional fees and costs and the cost of enforcing any right to indemnification hereunder arising out of or related to the Services or Agency's negligence, willful misconduct or breach of this Agreement. Creditor shall indemnify Agency from any claims that Creditor did not have a legal right to seek peaceful repossession of the items assigned, including reasonable attorney and professional fees and costs and the cost of enforcing any right to indemnification hereunder arising out of or related to Creditor's negligence, willful misconduct or breach of this Agreement.

20. **Remedies.** If the Agency violates any provision of this Agreement, Creditor shall, in addition to any damages to which it is entitled, be entitled to seek immediate injunctive relief against the Agency prohibiting further actions inconsistent with the Agency's obligations under this Agreement. To the extent a party is required to seek enforcement of this agreement or otherwise defend against an unsuccessful claim of breach, the unsuccessful party shall be liable for all attorney's fees and costs incurred by the successful party to enforce the provisions of this Agreement. All rights and remedies provided in this Agreement are cumulative and not exclusive, and the exercise by either Party of any right or remedy does not preclude the exercise of any other rights or remedies that may now or subsequently be available at law, in equity, by statute, in any other agreement between the Parties or otherwise.

21. **Governing Law.** All matters arising out of or relating to this Agreement are governed by and construed in accordance with the internal laws of the State of California without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than those of the State of California.

22. **Entire Agreement.** This Agreement, including and together with any related attachments, schedules, and exhibits, constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter.

23. **Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "Notice") shall be in writing and addressed to the parties at the addresses set forth in this Agreement or to such other address that may be designated by the receiving party in writing. All Notices shall be delivered via electronic mail, facsimile or certified or registered mail. Except as otherwise provided in this Agreement, a Notice is effective only upon receipt of the receiving party, and if the party giving the Notice has complied with the requirements of this Section.

24. **Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

25. **Counterparts.** This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

SIERRA CREDIT CORP. ("Creditor")

By: _____
LISSET ALONSO
Director of Servicing

LENDERS RECOVERY ("Agency")

By: _____
Name: LUIS F. TOBAR
Owner

---

## ATTACHMENT A – SERVICES TO BE PROVIDED

The following is a list of services to be provided by Agency:

1. Give status updates and repossession notifications on a pending request within 24-48 hours of running the given location of the vehicle.
2. Conduct a thorough condition report on every repossessed vehicle and provide Creditor with a copy of the condition report on the same day the vehicle is repossessed.
3. Conduct an inventory of personal property in the repossessed vehicle within 48 hours of repossession and provide Creditor with a copy of the inventory report on the same day the inventory is conducted.
4. Only properly licensed employees covered by the company bond will drive the repossessed vehicle in order to transport it to Creditor's warehouse.
5. Follow repossession laws by NOT doing the following:
   a. Disclose customer information to family members, neighbors or any third party;
   b. Taking any repossessed vehicle to an unauthorized location (i.e. any location other than Creditor's warehouse, located at 9160 Deering Ave., Chatsworth, California 91311);
   c. Misinforming customers by telling that they will not incur a repossession fee if they surrender their key or telling customers anything that is misleading and inaccurate; and
   d. Any other act or practice that may be deemed a violation of relevant laws and regulations.
6. Any other reasonable services requested by Creditor.

## ATTACHMENT B – PRICING SHEET AND COVERAGE AREA

<u>See attached Pricing Sheet and Coverage Area.</u>

# Lenders Recovery   State License No. R.A 1356

| | | |
|---|---|---|
| Involuntary Recoveries | All 4 Counties | $ 350.00 |
| GPS Recoveries | All 4 Counties | $ 300.00 |
| Voluntary Recoveries | San Fernando Valley (Local) | $ 275.00 |
| Voluntary Recoveries | All 4 Counties | $ 300.00 |
| Impound Recoveries/ Releases | San Fernando Valley (Local) | $ 275.00 |
| Impound Recoveries/ Releases | All 4 Counties | $ 300.00 |
| Impound Recoveries/ Releases | San Bernardino County | $ 300.00 |
| Vehicle Storage | To R/O Per Calendar Day | $ 20.00 |
| Vehicle Storage | To L/O Per Calendar Day 5 days free | $ 0.00 |
| Deliveries | San Fernando Valley (Local) | $ 0.00 |
| Deliveries | Los Angeles Area | $ 100.00 |
| DRN | | $ 375.00 |
| GPS Installation | | $ 30.00 |

*(handwritten annotations): 10 / $10 after*

*(handwritten box near DRN): "TRANS ONLY $75.°° IN THE VALLEY $175.°° OUT OF THE VALLEY"*

## Personal Property:
We Store all personal property for security purposes and by law for a period of 60 days only.
following disposal on the 61rst day. A fee of $15.00 per bag, per day, plus a $25.00 inventory fee, from the day the unit was recovered. will be charged to the R/O upon redemption.

Lenders Recovery does not remove any items attached to the unit such as, stereo systems, amps, speakers, DVD systems, tool boxes, etc. Unless is required by finance company.

## Redemptions:
All redemptions, on personal property and or vehicles are done by appointment only, within 24 hours written notice to Lenders Recovery and with proper ID from R/O.

## Pictures:
We provide pictures of no charge.

*We are registred with RDN and affiliated with DRN for your convenience.*

If you have any concerns or need to get in contract with our office please call the number listed below and ask to speak to Luis Tobar or email ltobar@lendersrecoveryinc.com

P.O Box 4954 Panorama City CA 91412 Office (818)781-2951 Fax (818)647-0300

# *Lenders Recovery* Coverage Area
## List of the areas we cover for repossessions & Impounds
### L.A. County & Ventura County

**A**
Acton
Agoura Hills
Alhambra
Altadena
Arleta
Arcadia
Artesia
Azusa

**B**
Baldwin Park
Bell
Bell Gardens
Bellflower
Beverly Hills
Boyle Heights
Boyle Hills
Brea
Brentwood
Buena Park
Burbank

**C**
Calabasas
Camarillo
Canoga Park
Canyon Country

Carson
Castaic

Chatsworth
City of Commerce
City of Industry
City Terrace
Claremont
Compton
Covina
Crenshaw
Cudahy
Culver City

**D**
Diamond Bar
Downey
Duarte

**E**
East Los Angeles
Echo Park
El Monte
El Segundo
Encino
Eagle Rock

**F**
Fillmore
Florence
Fullerton

**G**
Gardena

Glendale
Glendora
Granada Hills

**H**
Hacienda Heights

Hawthorne

Highland Park
Hollywood
Huntington Park

**I**
Inglewood
Irwindale

**L**
La Canada
La Crescenta
La Habra

La Habra Heights
Lake Balboa
Lake Hughes
Lakeview Terrace
Lakewood
La Mirada
Lancaster
La Puente
Lawndale
Lincoln Heights
Little Rock
Los Angeles
Long Beach
Lynwood

**M**
Marina Del Rey
Maywood
Mira Loma

Mission Hills
Monrovia
Montclair
Montebello
Monterey Park
Montrose
Moorpark

**N**
Newbury Park
Newhall
North Hills
North Hollywood
Northridge
Norwalk

**O**
Ontario
Oxnard

**P**
Pacoima
Palmdale
Panorama City
Paramount
Pasadena
Pico Rivera
Pomona
Port Hueneme
Porter Ranch

**Q**
Quartz Hills

**R**
Rancho Cucamonga
Redondo Beach
Reseda
Rosemead          -
Roberson
Rosewood
Rowland Heights

**S**
San Dimas
San Fernando
San Gabriel
San Marino
San Pedro
Santa Monica
Santa Paula
Sherman Oaks
Sierra Madre
Silver Lake
Simi Valley
South El Monte
South Gate
South Pasadena
Studio City
Sun Valley
Sunland
Sylmar

**T**
Tarzana
Temple City
Thousand Oaks
Topanga
Toluca Lake
Torrance
Tujunga

**U**
Universal City

**V**
Valencia
Valley Glen
Valley Village
Van Nuys
Venice
Ventura
Verdugo City
Verdugo Hills

Vernon

**W**
Walnut
West LA
West Covina
Westchester
W. Hollywood
Westlake
Westwood
Whittier
Wilmington
Wilshire Ctr
Winnetka
Woodland Hills

**Y**
Yucaipa

## SERVICING AGREEMENT

This Servicing Agreement ("Agreement") is made and entered into as of _____ June 29 , 2023 ("Effective Date") by and between Primera Financial Corp., a California corporation ("Servicer") and Sierra Credit Corporation, a California corporation ("Lender"). Servicer and Lender may individually be referred to as a "Party" and collectively as the "Parties").

### RECITALS

WHEREAS, Lender owns certain retail installment sales contracts (each a "Contract" and collectively the "Contracts") listed on Exhibit A, attached hereto and incorporated herein, whereby an obligor (each an "Obligor" and collectively the "Obligors") under each Contract has financed through Lender the purchase of an automobile.

WHEREAS, for each Contract, Lender holds a certificate of title (each a "Title" and collectively the "Titles") evidencing the ownership of the automobile financed by the Contract and Lender's lien and rights with respect to that automobile.

WHEREAS, Lender desires to engage Servicer to service the Contracts according to the terms of this Agreement.

NOW, THEREFORE, the Parties agree as follows:

1. Appointment. Beginning on the Effective Date and continuing until the termination of this Agreement in accordance with Section 3 below, Lender appoints and contracts with Servicer as an independent contractor, subject to the terms of this Agreement, for the servicing of the Contracts. Record title to each Contract shall remain in the name of the Purchaser. If any actions of Lender are necessary or appropriate in connection with the servicing and administration of the Contracts hereunder, then Lender shall use its commercially reasonable efforts to perform such actions in a timely manner and to cooperate with and assist Servicer in connection with such actions.

2. Servicing of Contracts. Servicer, as an independent contractor, shall service and administer each Contract from and after the Effective Date in accordance with applicable law, the accepted servicing practices and the terms of this Agreement and shall have full power and authority to do any and all things in connection with such servicing and administration as limited by the terms of this Agreement and accepted servicing practices. Servicer's general obligations with respect to the servicing of Contracts hereunder shall include, without limitation, the following:

      a. attempting to collect Obligor payments from that address on the schedule set forth in the applicable Contract documents;

      b. correctly posting proceeds from all collected Obligor payments to the applicable Lender account;

      c. maintaining a toll free number (staffed between normal business hours (Pacific Time) during its regular business days) for Obligors to call with inquiries with respect to the Contracts, and responding to such inquiries;

1

**Exhibit B**

d.  responding to inquiries by any regulatory authority with respect to the Contracts;

e.  investigating and maintaining collection procedures for delinquencies, and delivering any reports on delinquencies as may be agreed upon by the Parties;

f.  processing payments provided by Obligors on the Contracts;

g.  managing Titles and sending Titles to Obligors who have finally paid off Contracts;

h.  grant, permit or facilitate any modification for any Contract in accordance with the accepted servicing practices and provided that such modification is, in Servicer's reasonable determination, a practical way to obtain a reasonable recovery from such Contract;

i.  demand, receive, and collect all monthly or otherwise payments due under each Contract when due and payable;

j.  realize upon Contracts in such a manner that reasonably attempts to maximize the receipt of principal and interest for Lender, including pursuing any modification or pursuing other loss mitigation or other default recovery actions consistent with the accepted servicing practices;

k.  accurately and fully furnish, in accordance with the Fair Credit Reporting Act and its implementing regulations, as well as Servicer's own policies and practices, accurate and complete information (e.g., favorable and unfavorable) on its Obligor credit files to each of the following credit repositories, as applicable: Trans Union, LLC, Experian Information Solution, Inc. and Equifax, Inc.;

l.  repossess all automobiles associated with defaulted or charged-off Contracts and sell or caused to be sold at wholesale auction or otherwise all such automobiles;

m.  manage all insurance claims and recoveries;

n.  pay all amounts collected by Servicer from the Contracts into Lender's account within thirty (30) days of receipt (less the Consideration, defined below);

o.  promptly communicate to Lender all material information about collection of the Contracts; and

p.  keep accurate records, documentation, and files for each Contract in compliance with this Agreement and all applicable laws and make such records, documentation, and files available for inspection by Lender.

3.  <u>Term</u>.  The term of this Agreement shall commence of the Effective date and continue in effect until the earlier of: (a) such date as all Contracts become fully paid or charged-off, or (b) the earlier termination of this Agreement in accordance with the terms of this Section 3.  This Agreement may be terminated by Servicer in Servicer's sole discretion in the event (a) Lender fails to make any payments owed hereunder to Servicer or (b) Lender fails to duly observe or perform in any material respect any of its covenants, obligations or agreements set forth in this Agreement that continues unremedied for a period of thirty (30) days after the date upon which Servicer

delivered notice of such failure to Lender. This Agreement may be terminated by Lender in Lender's sole discretion upon the occurrence of any of the following events:

a. failure by Servicer to duly observe or perform in any material respect any of its covenants, obligations or agreements set forth in this Agreement that continues unremedied for a period of thirty (30) days after the date upon which Lender delivered notice of such failure to Servicer;

b. a decree or order of a court or agency or supervisory authority or regulatory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, including bankruptcy, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against Servicer and such decree or order shall have remained in force undischarged or unstayed for a period of thirty (30) days;

c. any failure by Servicer to make any undisputed payment, transfer or deposit into a Lender account as required by this Agreement which continues unremedied for a period of five (5) business days after Servicer's receipt of notice of such failure from Lender; or

d. any regulatory authority shall have condemned, seized or appropriated, or to have assumed custody or control of, all or any substantial part of the property of Servicer, or shall have taken any action to displace the management of Servicer or to curtail its authority in the conduct of the business of Servicer, or takes any action in the nature of enforcement to remove or prohibit Servicer from acting as a servicer of Contracts.

4. <u>Consideration</u>. Lender shall pay to Servicer twelve and one-half percent          of all amounts collected by Servicer on the Contracts ("<u>Consideration</u>"). Servicer shall withhold such Consideration from all amounts posted to Lender's accounts.

5. <u>Expenses</u>. Servicer will be responsible for all expenses incurred in performing services under this Agreement. Lender will reimburse Servicer for any charges incurred such as Field Chase Fees, Repo fees, impound fees, legal fees, etc. Servicer will have option to deduct such fees from the proceeds it collects.

6. <u>Relationship of the Parties</u>. Servicer enters into this agreement and will remain throughout the Term as an independent contractor. During the Term, no employee, agent, contractor, or representative of Servicer will be an employee, partner, agent, or principal of the Company while this agreement is in effect, including but not limited to, the application of the Federal Insurance Contribution Act, the Social Security Act, the Federal Unemployment Tax Act, the provisions of the Internal Revenue Code, any state revenue and taxation code relating to income tax withholding at the source of income, workers' compensation, and other benefit payments and third party liability claims. Servicer is not authorized to enter into contracts or agreements on behalf of Lender or to otherwise bind Lender in any manner or create obligations of Lender to third parties. Servicer agrees that Servicer and its employees, agents, contractors, and representatives are not entitled to the rights or benefits afforded to Lender's employees, including disability or unemployment insurance, workers' compensation, medical insurance, sick leave, or any other employment benefit. Servicer is responsible for providing, at Servicer's own expense, disability,

3

unemployment, health, workers' compensation, liability, and other insurance, training, permits, and licenses for Servicer's employees and subcontractors, where applicable.

7.  <u>Reports</u>.  Servicer shall deliver or otherwise make available to Lender in a digital format during the Term a monthly statement with respect to the previous month that includes a list of all Contracts, delinquency status of all Contracts, payments collected during the month from each Contract, and a list of any Contracts that were fully repaid or became charged-off during such month within fifteen (15) days of each month.

8.  <u>Indemnity</u>.  Servicer agrees to indemnify, defend, and hold Lender free and harmless from all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries, and deficiencies, including interest, penalties, attorney's fees, and costs, that Lender may incur as a result of servicing the loans or by the operations, performance, or negligence of Servicer in the performance of this Agreement.

9.  <u>Insurance</u>.  Servicer shall carry the following insurance in amounts and form as follows: CGL:                            Servicer shall deliver proof of same to the Lender upon request. Servicer further agrees to indemnify and hold Lender harmless from any and all claims arising from or relating to this Agreement, including but not limited to negligent acts, omissions, loss or damage, including willful destruction or theft.

10. <u>Compliance</u>. Servicer shall abide by all applicable federal, state and local law, rules and regulations, or the orders of any federal, state or local government properly exercising authority over the business operations of the Lender.

11. <u>Standards</u>. Servicer shall provide services consistent with prevailing standards of professional practice.  At all times, Servicer shall conduct itself in accordance with the ethical standards of its profession. Servicer shall perform all services to the best of Servicer's ability and shall comport itself in a manner that does not adversely affect Lender's relationship with its clients, suppliers, or employees.

12. <u>Equipment and Materials</u>. Unless otherwise agreed by the parties, Service Provider will supply all tools, materials, and equipment required to perform the Services under this Agreement.

13. <u>Miscellaneous</u>.

a.  <u>Assignment</u>.  Neither this Agreement nor any duties or obligations under this Agreement may be assigned by either Party without the prior written consent of the other.

b.  <u>Notices</u>.  Any notices to be given hereunder by either party to the other shall be in writing and delivery may be effected either by personal delivery or by mail (registered or certified), postage prepaid, with return receipt requested.  Mailed notices shall be addressed to the Parties. Notices delivered personally will be deemed communicated as of actual receipt; mailed notices will be deemed communicated three (3) days after mailing.

c.  <u>Entire Agreement</u>.  This Agreement supersedes any and all agreements, either oral or written, between the Parties hereto with respect to the rendering of services by Servicer for Lender and contains all of the covenants and agreements between the parties with respect to the

rendering of such services in any manner whatsoever. Each Party to this Agreement acknowledges that no representations, inducements, promises or agreements, orally or otherwise, have been made by any Party, or anyone acting on behalf of any Party which are not embodied herein, and that no other agreement, statement or promise not contained in this Agreement shall be valid or binding. Any modification of this Agreement will be effective only if it is in writing signed by the Party to be charged.

      d.  <u>Governing Law</u>.  This Agreement will be governed by and construed in accordance with the laws of the State of California.

      e.  <u>Amendment</u>.  This Agreement may only be modified by a writing signed by both parties.

      f.  <u>Severability</u>.  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions will nevertheless continue in full force without being impaired or invalidated in any way.

      g.  <u>Waiver</u>.  No waiver by any party to this Agreement shall act as a waiver of a future event or occurrence and no delay or omission by any party to enforce any of its right under this Agreement shall prejudice its rights.

      h.  <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together shall be deemed to be one and the same agreement.  This Agreement may be signed and delivered electronically (via email or telefax) and signatures on any such document so transmitted shall be valid as originals.

[Signature Page Follows]

5

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**SERVICER**
Primera Financial Corp.
A California corporation

By: _____
    Christian Cruz, President

**LENDER**
Sierra Credit Corporation
A California corporation

By: _____
    Ariel Rosso, President

By: _____
    Andrea Delpola, Secretary

6

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective
Date.

**SERVICER**
Primera Financial Corp.
A California corporation

By: _____
Christian Cruz, President

**LENDER**
Sierra Credit Corporation
A California corporation

By: _____
Ariel Rosso, President

By: _____
Andrea Delpola, Secretary

6

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**SERVICER**
Primera Financial Corp.
A California corporation


By: _____
       Christian Cruz, President

**LENDER**
Sierra Credit Corporation
A California corporation


By: _____
       Ariel Rosso, President

By: _____
       Andrea Delpola, Secretary

6

## EXHIBIT A

**List of Contracts**